

# IN THE
# TENTH COURT OF APPEALS

### No. 10-16-00382-CR

**THOMAS BENSON TAYLOR,**

                                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                        **Appellee**

―――――――――――

**From the 249th District Court
Johnson County, Texas
Trial Court No. F50817**

―――――――――――

## MEMORANDUM OPINION

―――――――――――

In one issue, appellant, Thomas Benson Taylor, complains that there is insufficient evidence to support the jury's finding that he used a deadly weapon during the commission of the felony offense of driving while intoxicated, a third offense or more. *See* TEX. PENAL CODE ANN. § 49.09(b) (West Supp. 2016). Because we conclude that the evidence is sufficient to support the jury's deadly-weapon finding, we affirm.

## I.     PROCEDURAL BACKGROUND

Here, Taylor was charged by indictment with driving while intoxicated, a third offense or more.  *See id.*  Also included in the indictment were enhancement paragraphs referencing Taylor's four prior felony convictions for driving while intoxicated.  Prior to trial, the State indicated its intent to seek a deadly-weapon finding based on the fact that Taylor used a deadly weapon, his motor vehicle, during the course of committing the charged offense.  This matter proceeded to trial.

Taylor pleaded guilty to the charged offense and "true" to the enhancement paragraphs in the indictment.  The jury decided punishment.  After finding that Taylor used or exhibited a deadly weapon in the commission of this offense, the jury sentenced Taylor to thirty-five years' incarceration in the Institutional Division of the Texas Department of Criminal Justice.  Taylor subsequently filed motions for new trial and in arrest of judgment.  These motions were overruled by operation of law.  *See* TEX. R. APP. P. 21.8(a), (c).  This appeal followed.

## II.     SUFFICIENCY OF THE EVIDENCE SUPPORTING THE DEADLY-WEAPON FINDING

In his sole issue on appeal, Taylor contends that the evidence is insufficient to support the deadly-weapon finding because the record does not show that his vehicle posed an actual danger of death or serious bodily injury to others on the day he was stopped and arrested for driving while intoxicated.  We disagree.

**A.      Applicable Law**

In reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have made the deadly-weapon finding beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) ("To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that:   (1) the object meets the statutory definition of a dangerous weapon . . . (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction was obtained; . . . and (3) that other people were put in danger." (internal citations and quotations omitted)).   This standard enables the fact finder to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.   In performing our sufficiency review, we may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) ("We resolve inconsistencies in the testimony in favor of the verdict.").   Instead, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the

evidence when viewed in the light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).

A trial court must enter a deadly-weapon finding in the judgment if the trier of fact affirmatively finds that the defendant used or exhibited a deadly weapon during the commission of a felony offense or during immediate flight therefrom. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2016); *see also Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985). A "deadly weapon" is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2016). A motor vehicle can be a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *Id.*; *see, e.g., Sierra v. State*, 280 S.W.3d 250, 255-56 (Tex. Crim. App. 2009).

**B.      The Facts**

Deputy Gerald Jones of the Johnson County Sheriff's Office testified that, on the day in question, he observed Taylor driving a full-size Chevrolet pickup truck southbound on Old Renfro Road, a heavily-traveled, two-lane road with no shoulder, near FM 917 at sixty-three miles per hour, though the posted speed limit was forty miles per hour. Deputy Jones further described Old Renfro Road as having "houses all up and down the road, drives, county roads that intersect with it," as well as commercial properties nearby.

After observing Taylor driving over the posted speed limit, Deputy Jones "waited for him to pass, then I immediately turned around, activated my emergency lights and sirens to go catch him." However, after turning around, Deputy Jones initially lost Taylor over a hill. He later caught up with Taylor when they both approached a yield sign at the intersection of Old Renfro Road and FM 917. At this intersection, which was near a crowded flea market, Taylor made a right turn.[1] Though, according to Deputy Jones, one must "come to a slow, almost to a stop, to check for oncoming traffic" when approaching a yield sign, Taylor did not do so. Taylor continued on FM 917 for a few yards and then pulled over. While observing Taylor's vehicle, Deputy Jones noticed that Taylor drove over the center line into the oncoming lane of traffic when he turned onto FM 917 and that another vehicle had to take evasive action because of Taylor's turn.[2] Based on these observations, Deputy Jones believed that Taylor was operating his pickup truck in a dangerous manner.

Thereafter, Deputy Jones initiated a traffic stop of Taylor. Upon approaching Taylor's pickup truck, Deputy Jones noticed Taylor's slurred speech and the smell of alcohol emitting from Taylor's breath. Taylor admitted that he had drank "a few" beers and that he had some beer in the pickup truck. He then "reached down towards his feet

---

[1] Deputy Jones recalled there were numerous vehicles and people standing outside of the flea market and that the flea market was located maybe ten feet from the road surface.

[2] The testimony established that it was clear and sunny on the day in question.

and handed [Deputy Jones] a six-pack of beer." Three of the beers were open and empty, and the remaining beers were cold. Deputy Jones also saw that Taylor had a container of beer that was three-quarters full between his legs, as well as a dog inside the cab of the pickup truck. Subsequently, Taylor staggered out of the pickup truck, and Deputy Jones administered the standard field-sobriety tests. Taylor exhibited six of six clues on the horizontal-gaze-nystagmus test and eight of eight clues on the walk-and-turn test. Taylor was unable to complete the one-leg-stand test. Deputy Jones arrested Taylor for driving while intoxicated.[3]

## C.    Analysis

Viewing the evidence in the light most favorable to the verdict, we cannot say the evidence is insufficient to support the jury's deadly-weapon finding. *See Brister v. State*, 449 S.W.3d 490, 493 (Tex. Crim. App. 2014) ("Appellate courts "review the record to determine whether, after viewing the evidence in the light most favorable to the [verdict], any rational trier of fact could have found beyond a reasonable doubt that the [vehicle] was used or exhibited as a deadly weapon." (quoting *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003))). Indeed, the evidence shows that Taylor drove his full-size pickup truck in a reckless manner while severely intoxicated—more than two times the legal limit. Deputy Jones's testimony reflected that Taylor drove more than twenty miles

---

[3] Bob Browder, a senior forensic chemist with the Texas Department of Public Safety, stated that Taylor's "first subject breath specimen was 0.183. The results of the second breath specimen were 0.176." In other words, Taylor's samples tested more than double the legal limit of 0.08.

over the speed limit, failed to properly yield at the intersection of Old Renfro Road and FM 917, and had difficulty negotiating the right turn at the intersection, which resulted in him crossing the center line and causing another vehicle to take evasive action to avoid a collision. Additionally, the roadways that Taylor traveled upon were narrow with no shoulder, had heavy traffic, and were surrounded by houses and businesses, especially a crowded flea market that was merely ten feet from the roadway and was not protected by a barrier or guardrail. Accordingly, a rational trier of fact could have found beyond a reasonable doubt that Taylor's pickup truck was: (1) capable of causing death or serious bodily injury in the manner of its use; (2) used during the commission of the charged offense of driving while intoxicated; and (3) put other people in actual danger. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B); *Drichas*, 175 S.W.3d at 797-98 (noting that "actual danger means one that is not merely hypothetical"); *see also Sierra*, 280 S.W.3d at 255-56. In other words, a rational trier of fact could have found beyond a reasonable doubt that Taylor's pickup truck constituted a deadly weapon in this instance. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B); *Sierra*, 280 S.W.3d at 255-56; *Drichas*, 175 S.W.3d at 798; *see also Brister*, 449 S.W.3d at 493; *Cates*, 102 S.W.3d at 738.

However, despite the foregoing, Taylor asserts that the evidence is insufficient to support the deadly-weapon finding because Deputy Jones admitted on cross-examination that he did not document in his report that Taylor failed to yield the right-of-way when turning onto FM 917 or that he crossed the center line on FM 917. Taylor

also relies on Deputy Jones's testimony that he did not pull over Taylor for reckless driving, but rather for speeding. Given this, Taylor contends that his pickup truck was not a deadly weapon used in the commission of the charged offense. Additionally, Taylor asserts that this case is similar to *Brister*. *See* 449 S.W.3d at 495 (holding that the record evidence did not allow for a reasonable inference that appellant used his motor vehicle as a deadly weapon).

First, assuming Taylor's interpretation of Deputy Jones's testimony actually constituted a conflict in the evidence, we note that conflicts or inconsistencies in the evidence are within the province of the factfinder to resolve. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Curry*, 30 S.W.3d at 406. Moreover, as a reviewing court, we are to defer to the factfinder's resolution of any conflicts in the evidence. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *Lancon*, 253 S.W.3d at 706 ("As we explained in *State v. Johnson*, 23 S.W.3d 1 (Tex. Crim. App. 2000), an appellate court just give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in the better position to judge."); *Curry*, 30 S.W.3d at 406; *Chambers*, 805 S.W.2d at 461. As such, we disagree with Taylor's assertion that the purported conflicts in the testimony of Deputy Jones demonstrate an insufficiency of the evidence supporting the deadly-weapon finding.

Moreover, we are not persuaded by Taylor's reliance on *Brister*. Specifically, in *Brister*, the Court noted that the testimony established "that, on a single occasion, appellant briefly crossed the center line into the oncoming lane of traffic at a time at which there were very few, if any, cars in that lane." *Id.* at 495. After the officer activated his emergency lights, "appellant committed no other traffic offenses and appropriately stopped. There is no testimony that appellant caused another vehicle or person to be in actual danger." *Id.* Based on this evidence, the *Brister* Court concluded that the evidence did not support a reasonable inference that appellant used his motor vehicle as a deadly weapon. *Id.*

As noted above, our fact scenario is different. Deputy Jones recounted that Taylor drove more than twenty miles over the speed limit, failed to properly yield at the intersection of Old Renfro Road and FM 917, and had difficulty negotiating the right turn at the intersection, which resulted in him crossing the center line and causing another vehicle to take evasive action to avoid a collision. The evidence also established that the roadways that Taylor traveled upon were narrow with no shoulder, had somewhat heavy traffic, and were surrounded by houses and businesses, including a crowded flea market that was merely ten feet from the roadway and was not protected by a barrier or guardrail. Based on this evidence, we find the *Brister* case to be factually distinguishable from the case at bar. We therefore overrule Taylor's sole issue on appeal.

### III.     CONCLUSION

We affirm the judgment of the trial court.


                     AL SCOGGINS
                     Justice

Before Chief Justice Gray,
       Justice Davis, and
       Justice Scoggins
(Chief Justice Gray concurring)*
Affirmed
Opinion delivered and filed April 19, 2017
Do not publish
[CR25]


*(Chief Justice Gray concurs in the Court's judgment to the extent it affirms the trial court's judgment of conviction and deadly-weapon finding. A separate opinion will not issue.)

